IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TRINELL KING, | ] |
| Plaintiff, | ] |
| v. | ] Case No: 2:17-BE-00174-S |
| CITY OF WARRIOR, et. al., | ] |
| Defendants. | ] |

## MEMORANDUM OPINION

This civil rights case is before the court on "Motion for Summary Judgment on Count 2" (doc. 32), filed by individual Defendants Ricky Pridmore, Corey Archer, Jimmy Rodgers, Dylan McCoy, Ray Horn, and Andrew Hill. In Count Two, the Plaintiff asserts that, in coercing him "through law or the legal process" to participate involuntarily in the dangerous plan to apprehend a fleeing suspect, the Defendant officers "violated the prohibition against involuntary servitude provided by the Thirteenth Amendment." (Compl. Doc. 1, at 12-13). The Plaintiff has responded (doc. 42), and the individual Defendants replied (doc. 45); this motion has received thorough briefing. For the reasons stated in this Memorandum Opinion, the court WILL GRANT the motion.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure. Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a

1

district court reviews a motion for summary judgment it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## FACTS

For the limited purposes of this motion, the Defendants do not dispute the factual allegations of Plaintiff Trinell King's Complaint to the extent that they are relevant and non-conclusory. (Defs' Br. Doc. 33, at 2 n. 2). Accordingly, any citations regarding the facts refer to the Complaint itself instead of to evidentiary filings. The court recognizes that the individual Defendants have filed this motion for summary judgment long before the deadlines for such motions and for completion of discovery, asserting their right to qualified immunity from suit.

On the morning of September 28, 2015, Plaintiff King, who is a black man in his mid-twenties, drove his girlfriend's car and picked up his passenger, Donovan Brown, in Warrior, Alabama, to drive Brown to Birmingham. At the time King picked up Brown, he had no knowledge that Brown was carrying a gun or that Brown had outstanding warrants for his arrest. Shortly after King picked up Brown, Defendant Warrior police officer Ricky Pridmore, who is white, stopped King's vehicle in an "overwhelmingly white suburb" of Warrior and requested that King and Brown produce identification. King complied; however, Brown had no identification and gave the officer a false name.

After conducting a background check, Officer Pridmore discovered that Brown had not given his real name, and he asked Brown why. Brown then candidly responded that he did so because he had four outstanding warrants for his arrest and was presently carrying a gun illegally. According to the facts, this conversation somehow occurred while Officer Pridmore was in his

2

own vehicle, and when the officer then returned to King's car, Brown opened the passenger door and ran away on foot. Officer Pridmore removed King from his car, handcuffed him, and placed him in the backseat of the patrol vehicle.

Other police officers, all of whom were white, arrived on the scene to help locate Brown. For the next two hours, King remained handcuffed in Officer Pridmore's vehicle. According to King, at most, the officers had evidence that King was guilty of driving on an expired tag with a suspended license. Nevertheless, they told King that "you are in serious trouble," "we are going to put some serious charges on you unless you cooperate with us." (Compl. Doc. 1, at 6 ¶ 25).

King answered the officers' questions, giving them Brown's real name. However, the officers wanted more. They took King's cell phone and put together a plan to catch Brown that would involve King arranging to give Brown a ride and the officers surrounding King's car at the pick up spot and apprehending Brown. The officers told King he had no choice but to cooperate with them, and, if he did not, they threatened to file charges against him, tow his car, and take him to jail. At no time did the officers advise King that he was free to leave or that he could choose not to participate in their scheme to apprehend Brown, and King insists that his participation was not voluntary. Further, they did not offer to pay him to assist them. Despite their knowledge that Brown had outstanding warrants, was carrying a gun, and had a history of felony convictions, the officers gave King no training about keeping himself safe and gave him no equipment, such as a Kevlar vest, with which to protect himself.

Following the officers' plan, King called Brown with the officers listening on the phone's speaker, telling him that the officers had let him go, when they had not yet done so; asking Brown where he was at the time; and offering to pick up Brown. Brown agreed to meet King.

Officer Pridmore then removed the handcuffs, gave him back his car keys, told him to drive to the agreed location at a normal speed, and reminded him that serious consequences would ensue if he varied from the plan. Officer Pridmore instructed King that the officers would be a short distance behind him and out of sight so that Brown would not see the trap.

Seconds after King drove to the designated location and Brown got into the passenger seat of his car, Defendant Officers converged on the scene in their vehicles. Officer Pridmore stopped his vehicle on the passenger side of King's vehicle, pointed a gun at Brown, and told Brown to show his hands. Brown then pulled his own gun and shot Officer Pridmore in the chest. Other Defendant Officers fired shots into King's car, injuring both Brown and King in the gunfight. Defendant officers shot King five times, resulting in surgery to save his life, permanent injuries to his arm, pain and suffering, medical bills and costs, and the loss of his ability to earn a living. As a result of this trap, the officers apprehended Brown.

King never received compensation for assisting Defendant Officers in catching Brown. King was never charged with any criminal offense or a traffic violation relating to the traffic stop on September 28, 2015 or that day's subsequent events.

The Complaint in this case asserts a number of claims against the Defendant Officers—Count One: Fourth Amendment/§ 1983; Count Two: Thirteenth Amendment/§ 1983; Count Three: Fourteenth Amendment Substantive Due Process/§ 1983; Count Four: State Law Negligence; Count Five: State Law Wantonness; Count Seven: State Law False Imprisonment—but the motion only addresses the claim in Count Two asserting a violation of Mr. King's Thirteenth Amendment rights.

**DISCUSSION**

The sole issue in this motion for summary judgment is whether, under the circumstances presented, King's claimed right to be free from involuntary servitude under the Thirteenth Amendment of the United States Constitution was clearly established at the time of the alleged violation, and thus, whether the officer Defendants are entitled to qualified immunity. Section 1 of the Thirteenth Amendment states that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. CONST. AMEND. XIII § 1.

While the Defendants deny that they violated the Thirteenth Amendment, they insist that the court need not decide whether a violation in fact occurred to address this motion; rather, they assert that, even assuming *arguendo* a violation occurred, the right was not clearly established at the time, and thus, qualified immunity applies and protects them from litigating this claim. This court agrees that the right was not clearly established and that Defendant officers are entitled to qualified immunity for the reasons discussed below.

*Qualified Immunity Standard*

Because Defendant officers have raised qualified immunity, the court begins first with the standard for addressing qualified immunity claims. The doctrine of qualified immunity provides that a government official acting within his discretionary authority is immune from suit unless his conduct "violates clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Keating v. City of Miami,* 598 F.3d 753, 762 (11th Cir. 2010) (quoting *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1366 (11th Cir. 1998)

(alteration in *Keating*)).[1] The immunity "is intended to 'allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Brown v. City of Huntsville,* 608 F.3d 724, 733 (11th Cir. 2010 (quoting *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002)).

The Eleventh Circuit instructs courts to use a multi-step, burden-shifting analysis to determine whether qualified immunity applies. To prove his entitlement to qualified immunity, the "public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. . . . Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Penley ex. rel. Estate of Penley v. Eslinger*, 605 F.3d 843, 849 (11th Cir. May 3, 2010) (quoting *Lee v. Ferraro*, 284 F.3d at 1194).

To determine whether qualified immunity is then appropriate, the Supreme Court has established a two-part test and has granted the district court discretion about the order in which it addresses each part. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). One part of the test is "whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (internal quotations and citation omitted). The second part of the test is whether the constitutional violation was clearly established at the time of the alleged wrongful conduct. *Pearson,* 555 U.S. at 816. The officer is entitled to qualified immunity unless the plaintiff establishes both parts of the test. "Qualified immunity is a defense not only from

---

[1] *Randall v. Scott*, 610 F.3d 701 (2010) overruled the heightened pleading standard in § 1983 cases, which *GJR* referenced only in *dicta.*

liability but also from suit, so courts should ascertain the validity of a qualified immunity defense as early in the lawsuit as possible.*" Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013).

*Acting within the Scope of Discretionary Authority*

Applying the qualified immunity standing to the instant case, the court first FINDS that the Defendant officers have met the threshold burden of establishing that they were acting within the scope of their discretionary authority when the allegedly wrongful acts occurred. The Defendants are Warrior police officers who were on duty and engaged in performing their job responsibilities as police officers for the City of Warrior; they were in the process of apprehending and arresting Brown, a fleeing felon who illegally possessed a gun, and/or planning his apprehension, when the relevant acts occurred. These actions fall into discretionary actions of police officers, and King acknowledges that he "cannot in good faith oppose Defendants' showing that they acted within the scope of their discretionary authority." (Pl's Br. Doc. 42, at 8). Therefore, the burden now shifts to Plaintiff King to show that qualified immunity is not appropriate.

*Plaintiff's Burden: Violation of Clearly Established Thirteenth Amendment Rights*

To meet his burden, King must prove not only that the Defendant officers violated his Thirteenth Amendment rights, but also that those rights were clearly established at the time of the violation. As noted above, Defendant officers have chosen to focus on the "clearly established" part of the test, arguing that because King cannot meet that part of his burden, the court and Defendant officers need not waste time and resources at this time addressing the other part of the test regarding the Thirteenth Amendment claim. This court, in its discretion, will first address the

7

"clearly established" part of the test. *See Young v. Borders,* 850 F.3d 1274, 1286 (11 th Cir. 2017) (stating that "we need not decide the constitutional violation issue. At a minimum, no clearly established federal law on [the date of the incident in question] gave fair and clear notice to [the deputy] that his conduct . . . was an illegal search."); *Pearson,* 555 U.S. at 236 (finding that the court has discretion about the order in which it addresses the two parts of the test).

An officer's conduct "violates clearly established law if the 'contours of [a] right [are] sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right.'" *Dukes v. Deaton,* 852 F.3d 1035, 1043 (11th Cir. 2017). The Eleventh Circuit has instructed that a plaintiff may show that the statutory or constitutional right allegedly violated was clearly established in three ways: "'(1) case law with indistinguishable facts[2] clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes [the] constitutional right; or (3) conduct so egregious that [the] constitutional right was clearly violated, even in the total absence of case law.'" *Perez v. Suszczynski,* 809 F.3d 1213, 1222 (11th Cir. 2016) (quoting *Lewis v. City of W. Palm Beach,* 561 F.3d 1288, 1291-92 (11th Cir. 2009) (citations omitted)). "The 'salient question' is whether the state of the law at the time of the incident gave [the defendant] 'fair warning' that his conduct was unlawful." *Perez*, 809 F.3d at 1222.

In Count Two, King asserts that, in coercing him "through law or the legal process" to

---

[2] In the recent decision of *Santana v. Miami-Dade Cnty,* the Eleventh Circuit stated that "Fair warning is commonly provided by materially similar precedent" but that "a case directly on point is not required as long as 'existing precedent' placed the "constitutional question beyond debate.'" ___ F. App'x ___, 2017 WL 2191468, at *8 (May 17, 2017) (*per curiam*) (quoting *Taylor v. Barkes,* ____ U.S. ___, 135 S. Ct. 2042, 2044 (2015) (internal quotation marks omitted)).

8

participate involuntarily in the dangerous plan to apprehend Brown, the Defendant officers "violated the prohibition against involuntary servitude provided by the Thirteenth Amendment." (Compl. Doc. 1, at 12-13). The Defendant officers argue that King cannot show by any of the three ways listed above that the violation of this Thirteenth Amendment right was clearly established.

All parties agree King cannot meet his burden through the *first* and most common way listed above: the existence of materially similar, controlling case law. None exists. As of September 28, 2015—the date of the incident—no case law existed in decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Supreme Court of Alabama that clearly establish the conduct in question violated of the Thirteenth Amendment. (Ds' Br., doc. 33, at 9; Pl's Br. Doc. 42, at 9). Indeed, King's counsel acknowledges that, even as of the date of the briefing, "this is a case of first impression" and "there is no case on point." (Doc. 42, at 9). His counsel further acknowledge that they have found no case "from any jurisdiction where the Thirteenth Amendment was considered on similar facts." (Doc. 42, at 8). This court found none.

Rather, King argues that he meets his burden through the *second* means listed above: the existence of a general constitutional rule that applies with obvious clarity. He acknowledges that this means of meeting his burden is "seldom applied," but argues that this case is the rare one when its application is appropriate. (Pl's Brief, Doc. 42, at 10).

Focusing on "fair notice" to the officer, the Supreme Court of the United States has explained that a plaintiff can prove that a constitutional violation is clearly established even when novel facts exist: "[b]ut general statements of the law are not inherently incapable of giving fair

9

and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'" *Hope,* 536 U.S. at 741 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

In January of this year, two controlling decisions, one of the Eleventh Circuit and one of the Supreme Court of the United States, addressed qualified immunity when litigants asserted that the narrow "obvious clarity" exception applied despite the lack of case law with materially similar facts. *White v. Pauly,* __ U.S. ____, 137 S. Ct. 548, 552 (2017); *Dukes v. Deaton*, 852 F.3d 1035, 1043 (11th Cir. 2017). Although neither addressed alleged violations of the Thirteenth Amendment, their treatment of the "obvious clarity" exception is instructive.

In the decision of *Dukes v. Deaton,* the Eleventh Circuit conflated the *Perez* decision's second and third ways of showing that a violation was clearly established, explaining that to satisfy the "narrow" "obvious clarity" exception, "official conduct must be so egregious that 'every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law.'" *Dukes,* 852 F.3d at 1043 (quoting *Coffin v. Brandau,* 642 F.3d 999, 1015 (11th Cir. 2011) (*en banc*)).

In *White v. Pauly,* the Supreme Court of the United States vacated and remanded the judgment of the Court of Appeals denying qualified immunity. The court instructed: "it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.' As this Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case. Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability

10

simply by alleging violation of extremely abstract rights.'" *White,* 137 S. Ct. at 552 (2017). *Id.* (omitting interior citations and quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 742 (2011) & *Anderson v. Creighton,* 483 U.S. 635, 635 & 639 (1987)).

With this guidance in mind, the court must determine whether a general constitutional rule applies with obvious clarity to the conduct here and placed Defendant officers on fair notice that their conduct was unlawful. King argues that the Thirteenth Amendment applied with obvious clarity to the following conduct of the Defendant officers: forcing a citizen, here, Mr. King, "to perform tasks to help the officers apprehend criminal suspects when the officers (1) do not pay the citizen, (2) physically compel performance by physically restraining the citizen's ability to leave, and (3) coerce performance by threatening to arrest the citizen on made-up and false charges." (Pl's Br. Doc. 42, at 10).

The court notes that this recitation of the conduct is not completely accurate. The officers physically constrained King at one point: after his felon passenger fled, Officer Pridmore handcuffed King, and he was still handcuffed when he called Brown to set up the meeting. However, before he followed through with the plan to assist in apprehending Brown and was in any possible physical danger, he was not *physically* restrained. The Defendant officers took off King's handcuffs, gave him the keys to his girlfriend's car, and allowed him to drive away alone in that car. The Defendant officers were following him at a distance, and King may not have wanted to test the officers; indeed, he did not do so. However, King was alone in the car at that point and driving it away.

The court acknowledges King's argument that the Defendant officers' conduct included forcing labor by threats of legal action, which he claims violated the Thirteenth Amendment.

King puts great emphasis on the officers' stating that they would "put some serious charges" on him if he did not cooperate, which he interpreted as a threat "to falsely arrest him on serious charges." He did not allege that the officers stated what the specific charges would be or explained what they meant by "serious charges." He also claims that the Defendant officers told him "you will be taken to jail unless you help us catch your friend" and "we will tow your car if you do not help us." (Compl. Doc. 1, ¶¶ 25 & 28).

While those statements may well be threats of legal action, this court does not agree that this conduct violates the Thirteenth Amendment with obvious clarity. King does not dispute that he may have been guilty of some offenses that warranted legal action, such as driving a car with an expired tag and with a suspended license. Nor does he dispute that he had been carrying a felon as a passenger in the car, that the felon had four outstanding warrants and had a gun, and that the felon fled the police from the car King was driving. Under these circumstances, the officers had a right to charge King with certain offenses and to tow the car rather than allow him to drive away with a suspended license. Some people would reasonably characterize as "serious" a charge that could subject him to as much as six months in jail, and his counsel acknowledge that the potential charges against him included that penalty.[3]

In any event, King may not have liked his choice—participation in the sting versus the car tow (which he had no license to drive) and the unspecified charges—but based on the facts in the

---

[3] Ala. Code § 32-6-19(a)(1) states that driving with a suspended or revoked license would be a misdemeanor punished by "a fine of not less than one hundred dollars ($100) nor more than five hundred dollars ($500), and in addition thereto may be imprisoned for not more than 180 days." The Plaintiff also points to Ala. Code § 32-6-219, which provides penalties for giving false statements in making an application for issuance of a temporary license tag but does not provide penalties for driving with an expired license tag.

12

Complaint, he had a choice,[4] albeit a painful one, whether to participate. *See, e.g., Flood v. Kuhn,* 443 F.2d 264, 268 (2d Cir. 1971) (affirming dismissal of plaintiff's claim that alleged professional baseball's reserve clause violated Thirteenth Amendment, and finding that no involuntary servitude existed because the plaintiff had the choice not to play baseball at all if he did not want to play for the club that "reserved" him); *Burger v. Military Sea Life Command,* 189 F.3d 467, at *2 (5th Cir. 1999) (*per curiam*) (finding that no violation of the Thirteenth Amendment occurred when crew members had the choice of working for free or being fired under some pretext: "To prove a claim of involuntary servitude [under the Thirteenth Amendment], an employee must show that there was no conceivable means of avoiding the continued service or confinement . . . . When the employee has a choice, even though it is a painful one, there is no involuntary servitude."); *cf United States v. Warren,* 772 F.2d 827, 830 (11th Cir. 1985) (affirming convictions of involuntary servitude violating criminal statute 18 U.S.C. § 1584, not the Thirteenth Amendment, where unpaid migrant workers in a labor camp "did not leave because they were scared, did not know where they were, and had no way out.")

In making these points, the court does not address whether a Thirteenth Amendment violation occurred in this case. In the instant case, the officers may well have been exaggerating the charges they could place against King, and their conduct may well have been improper.

---

[4] The Complaint states that "officer Defendants made it very clear to Plaintiff through their use of threats that he had no choice in the matter." (Doc. 1, at ¶ 36). However, the Complaint also states that officers removed his handcuffs, returned the keys to his girlfriend's car to him, allowed him to drive the car away without an officer present in the car (doc. 1, at § 37). Further, the only threats stated in the Complaint if he did not participates were not threats to physically hurt him but were threats to "put some serious charges" on him, "take him to jail" and "tow your car" (doc. 1, at § 25). These threats clarify that he did have a choice; however, the consequences of choosing not to participate might have been painful: costing him money, some time in jail, and/or having to explain to his girlfriend why her car had been towed.

13

However, King's burden on this claim is not simply to show that Defendant officers' conduct was improper: instead, he must show that the Thirteenth Amendment prohibition against involuntary servitude applied to their conduct with "obvious clarity." He has not done so.

Finally, King argues that, even if the Thirteenth Amendment by itself does not prohibit the Defendant officers' conduct, the Thirteenth Amendment combined with the Fourth Amendment's prohibition against unreasonable searches and seizures does. (Pl's Br., doc. 42, at 27). As support for this argument, King cites cases involving the Fourth Amendment but, once again, provides no case law addressing similar facts under the Thirteenth Amendment, or case law addressing combined prohibitions.

Under these circumstances, King has not met his burden to show that any violation of the Thirteenth Amendment was "so obvious" that it gave the Defendant officers fair notice of that violation. The specific issue is not whether the officers used good judgment or committed wrongful acts. The issue is whether every objectively reasonable officer in their shoes would have recognized that their conduct obviously violated not just any law, but the Thirteenth Amendment specifically. King has not shown that the Defendant officers' conduct was so egregious that it clearly violated the Thirteenth Amendment. And, all parties acknowledge that no controlling case law provided fair notice of any Thirteenth Amendment violation.

Therefore, the court FINDS that King has failed to meet his burden of establishing that any Thirteenth Amendment violation was clearly established as of September 28, 2015. The court further FINDS that qualified immunity applies to and protects the Defendant officers from the claim in Count Two. The court WILL GRANT the Defendant officers' motion, and WILL ENTER JUDGMENT in favor of all individual Defendants as to the claim in Count Two; as

claims remain against the individual Defendants in other counts, this entry is one of PARTIAL SUMMARY JUDGMENT.

The court previously entered summary judgment in favor of the City. (Doc. 31). This case will proceed with the remaining claims against the individual Defendants: Count One–Fourth Amendment/§ 1983; Count Three–Fourteenth Amendment Substantive Due Process/§ 1983; Count Four–State Law Negligence; Count Five– State Law Wantonness; and Count Seven– State Law False Imprisonment.

Dated this 24th day of August, 2017.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE